MAYER BROWN LLP
DANIEL D. QUEEN (SBN 292275)
dqueen@mayerbrown.com
350 South Grand Ave., 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500

*Counsel for Defendant 3M Company*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| THOMAS E. MCKINNON and RENEE L. MCKINNON,<br><br>Plaintiffs,<br><br>v.<br><br>APPLIED INDUSTRIAL TECHNOLOGIES; COTTO-WAXO COMPANY; ECLECTIC PRODUCTS LLC; HENRY COMPANY LLC; KESTER LLC; THE LIGHTHOUSE FOR THE BLIND (LHB INDUSTRIES); LSPS INC.; MOMAR, INCORPORATED; OMEGA INDUSTRIAL SUPPLY, INC.; RUST-OLEUM CORPORATION; PHIBRO ENERGY, INC.; ARKEMA INC.; STATE INDUSTRIAL PRODUCTS CORPORATION; 3M COMPANY; TYCO FIRE PRODUCTS, L.P.; and DOES 6 through 100,<br><br>Defendants | Case No. 22-cv-1398<br><br>California State Court Case No. 30-2020-01168045-CU-TT-CXC<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

1    Defendant 3M Company ("3M"), by and through undersigned counsel, hereby

2    gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1), 1441, and

3    1446, from the Superior Court of the State of California in and for the County of

4    Orange, to the United States District Court for the Central District of California. As

5    grounds for removal, 3M alleges as follows on personal knowledge as to its own

6    conduct and status and on information and belief as to all other matters:

7    ### PRELIMINARY STATEMENT

8    1.    Plaintiffs are a married couple who seek to recover for alleged harms

9    suffered by Plaintiff Thomas E. McKinnon ("Mr. McKinnon") as a result of his

10   alleged exposure to various products in the course of his employment by the

11   California Military Department.

12   2.    Plaintiffs seek to hold Defendants liable based on their alleged conduct

13   in manufacturing, supplying, and/or otherwise distributing the allegedly harmful

14   products. Plaintiffs allege that Mr. McKinnon was exposed to the Defendants'

15   various allegedly hazardous products during the period "[f]rom about 1977 through

16   2007" when he "was employed by the California Military Department at a fire

17   department located at the Joint Forces Training Base at Los Alamitos [hereinafter,

18   "JFTB Los Alamitos"] in Orange County, California." (Compl. ¶ 15).

19   3.    The Complaint did not initially name 3M as a defendant, but included

20   allegations concerning "Doe" defendants. Plaintiffs subsequently asserted claims

21   against 3M by name as the "manufacturer/supplier" of 3M AFFF 3% and 3M AFFF

22   6% (Ex. A, Summons, Amendment, and Complaint, at 5), which are two

23   formulations of aqueous film-forming foam ("AFFF"), to which Mr. McKinnon

24   allegedly was exposed in the course of his work at JFTB Los Alamitos.[1] Plaintiffs

25

26

27   _____

     [1] Plaintiffs have also added claims against Defendant Tyco Fire Products, L.P. for

28   its alleged conduct in manufacturing and/or supplying Ansul 6% AFFF. (Ex. B, Amendment to Complaint, at 2).

allege that the various Defendants' products, including 3M's AFFF, "caused" his alleged "toxic injuries and occupational diseases." (Compl. ¶ 14).

4.     AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec"). Thus, to the extent that Mr. McKinnon allegedly was exposed at JFTB Los Alamitos to AFFF manufactured by 3M, that AFFF included MilSpec AFFF.  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## **BACKGROUND**

5.     This action was filed on October 30, 2020, in the Superior Court of the State of California in and for the County of Orange, bearing Case No. 30-2020-01168045-CU-TT-CXC. (Ex. A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(3) and 1441(a) because the Superior Court of the State of California in and for the County of Orange is located within the Central District of California, Southern Division.

6.     3M was served on July 1, 2022. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

7.     3M is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase*

*Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

8.     Plaintiffs allege that Defendants, including 3M, are "manufacturers, suppliers, distributors, retailers, trademark owners and other entities in the chain of distribution" of chemicals or products, including AFFF, "to which Plaintiff, THOMAS E. MCKINNON, was exposed . . . and which Plaintiffs allege were substantial factors in causing Plaintiff's medical conditions, including Non-Hodgkins Lymphoma and other diseases and consequential injuries." (Compl. ¶ 14). Plaintiffs allege that Mr. McKinnon's alleged exposure to the various Defendants' products, including 3M's AFFF, occurred in the course of his employment by the California Military Department at JFTB Los Alamitos. (*Id.* ¶¶ 15-16).

9.     Plaintiffs seek to recover general damages, punitive damages, damages for loss of consortium, along with costs and pre- and post-judgment interest. (*Id.* Prayer for Relief at 31.)

10.     Plaintiffs assert claims against all Named Defendants, including 3M, and Does 6-100, for general negligence (*id.* ¶¶ 29-48); strict liability – failure to warn (*id.* ¶¶ 49-62); strict liability – design defect (*id.* ¶¶ 63-77); fraudulent concealment (*id.* ¶¶ 78-100); breach of implied warranties (*id.* ¶¶ 101-15); and loss of consortium (*id.* ¶¶ 116-18).

11.     Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and 3M is filing a copy with the Clerk of the Superior Court of the State of California in and for the County of Orange.

12.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

13.     3M reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

14.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D.Mass.2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

15.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

16.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against 3M and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[2]

**A.     MilSpec AFFF**

17.     Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States

---

[2] Following removal, 3M intends to designate this action for transfer to the MDL.

Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

18.     The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

---

[3] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[7] *Id.*

19.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term." PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

**B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

### 1.     *The "Person" Requirement Is Satisfied*

20.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M meets the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### 2.     *The "Acting Under" Requirement Is Satisfied*

21.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where

a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original).

22.     The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[8] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that 3M and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6 (same). If 3M and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

23.     In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea

---

[8] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

1  Systems Command, that govern AFFF formulation, performance, testing, storage,

2  inspection, packaging, and labeling. Further, the AFFF products in question were

3  subject to various tests by the United States Navy before and after being approved

4  for use by the military and for inclusion on the Qualified Products List maintained

5  by the DoD.[9]

6                  *3.*    *The Nexus Requirement Is Satisfied*

7        24.   The third requirement, that the defendant's actions taken under color of

8  federal office have a causal nexus with plaintiff's claims or injuries or be otherwise

9  related to the lawsuit, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[10]

10 To show the required nexus, it is sufficient for a defendant to establish a connection

11 or association between the lawsuit and the federal office. *Sawyer*, 860 F.3d at 258.

12       25.   Here, Plaintiffs' claims arise at least in part from 3M's production and

13 sale of AFFF manufactured to military specifications. Plaintiffs allege that the use of

14 AFFF is a source of their injuries. 3M contends that the design of MilSpec AFFF was

15 determined by military specifications. The conflict is apparent: MilSpec AFFF was

16 developed by 3M, and other manufacturers to meet specifications established by the

17 DoD. The design choices Plaintiffs are attempting to impose via state tort law would

18 create a conflict in which 3M could not comply with both the MilSpec and the

19 purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*,

20 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the

21 use of PFCs in AFFF and the design and manufacture of AFFF for the government.");

22 MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products

23 that it claims 3M manufactured and sold, and for which the U.S. military imposes

24 MilSpec standards. The Court . . . finds that the causation element of federal officer

25 _____

26 [9] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

27 [10] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the
   actions subject to suit resulted directly from government specifications or direction."
28 *Albrecht*, 2011 WL 5109532, at *5.

removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where 3M's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

26.    Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF. The causal connection or relationship between Plaintiffs' alleged injuries and 3M's actions under color of federal office is clear. It is irrelevant that the Complaint does not expressly contend that Plaintiffs have been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.    *The "Colorable Federal Defense" Requirement Is Satisfied*

27.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

28.    At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense"). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery,

- 10 -

to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[11]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

29.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30.    3M has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. 3M's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications . . . ."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant

---

[11] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

31.    Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[14] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[15] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

32.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor

---

[14] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[15] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

33.    3M's design of MilSpec AFFF was determined by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

*        *        *

WHEREFORE, 3M hereby removes this action from the Superior Court of the State of California in and for the County of Orange, to the United States District Court for the Central District of California.

Dated: July 28, 2022                          MAYER BROWN LLP


                                              By: */s/Daniel D. Queen*
                                                  Daniel D. Queen

                                              *Counsel for Defendant 3M Company*